## THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY and Others v. THE COMMON COUNCIL OF THE CITY OF DUNKIRK and Others.

Certiorari — *it cannot issue to a body which has lost control of the record to be reviewed —* 1880, *chap.* 269 — *does not apply to assessments for local improvements.*

*Certiorari* to the common council of the city of Dunkirk and the tax receiver thereof to review a special assessment levied upon the relator, a railroad company, to defray the expense of paving a portion of a street in that city through

8 PEOPLE ex rel. L. S. & M. S. R. CO. *v.* COMMON COUNCIL.

Fifth Department, October Term, 1885.

which its tracks were laid. Upon the hearing it appeared that prior to the issue of the writ the assessment-roll had been delivered to the tax receiver.

*Held*, that as the roll had passed from those officers who had any judicial or *quasi*-judicial control over it, and had been placed in the hands of a mere ministerial officer who had no power to correct errors in it, the writ could accomplish nothing and should for that reason be quashed.

That the defect was not cured or waived by the fact that a return had been made to the writ.

That the remedy of the relator was by an action against the city to recover any damages it might sustain by reason of the void and illegal proceedings.

*It seems*, that chapter 269 of 1880, entitled " An act to provide for the review and correction of illegal, erroneous or unequal assessments," does not apply to assessments for local improvements, but relates to town, ward, village or city assessments imposed upon the whole body of taxpayers for some general purpose of taxation.

Certiorari to review an assessment.

*Daniel H. McMillan*, for the relators.

*Walter D. Holt*, for the respondents.

Smith, P. J.:

This is a proceeding to review the action of the common council and special assessors of the city of Dunkirk, in levying an assessment upon the relator to defray the expense of paving a portion of Third street in said city. The city of Dunkirk is a municipal corporation, the powers and dutes of which are defined and limited by chapter 479 of Laws of 1867, and chapter 19 of Laws of 1880. The relator has its tracks laid upon and along said street, which is 110 feet in width. The portion of the street upon which the paving in question was done consists of a strip about twenty-two feet wide on the south side thereof, between the railroad tracks and the sidewalk, and extending for about 1,800 feet in length.

We are met at the outset by the contention of the respondents that the warrant for the collection of taxes, together with the assessment-roll, having been delivered to the tax receiver, the court had not jurisdiction thereafter to issue the writ, and that the proceeding should be quashed. That the delivery of the warrant to the receiver of taxes preceded the issuing of the writ is undisputed.

It is provided by the Code of Civil Procedure that the writ of *certiorari*, regulated thereby, can be issued in one of the following cases only :

First, where the right to the writ is expressly conferred or the issue thereof is expressly authorized by a statute; second, where the writ may be issued at common law by a court of general jurisdiction, and the right to the writ or the power of the court to issue it is not expressly taken away by a statute.

The writ in this case is not supported by chapter 269 of the Laws of 1880, entitled "An act to provide for the review and correction of illegal, erroneous or unequal assessments." We apprehend that that statute does not apply to assessments for local improvements, but relates to town, ward, village or city assessments imposed upon the whole body of taxpayers for some general purpose of taxation. Nor does the present proceeding purport to be brought under that statute or to comply with its provisions. The question is therefore presented, whether the writ can issue at common law.

In the case of *The People ex rel. Raplee* v. *Reddy* (43 Barb., 539), it was held, that where assessors in their return to a *certiorari* state that they have delivered the assessment-roll duly certified, to the supervisor of the town, and that the same is not in their possession or control, the court has no power to render any judgment that can affect the assessment-roll or correct any errors, although it is satisfied there was clear error in the proceedings. The court suggested that the only remedy of the person aggrieved under such circumstances·is by an action against the county to recover the amount of the tax improperly assessed and levied. The writ in that case was directed to the assessors alone, and the court said : " The writ of *certiorari* brings up, or is always supposed to bring up, the record of the inferior tribunal to which it is addressed. The judgment to be rendered in this court in such cases is to affirm or reverse, modify or correct the record. It is a judgment upon the record, and if the record were before us we might direct our clerk to correct the roll or send it back to the assessors for correction. When it appeared upon this return that the roll had been delivered to the supervisor, we could have directed a writ of *certiorari* to him or to the board of supervisors, if the roll had been delivered to such board, to bring the same before us. The writ would reach the record and bring it up wherever it might be, until it had passed beyond our power to review the assessment by its delivery to the collector, with the warrant of the board of supervisors annexed, after the extension of the tax for its collection."

This case is cited approvingly in *People ex rel. Buffalo and S. L. R. R. Co.* v. *Fredericks* (48 Barb., 173); *People ex rel. Law* v. *Commissioners* (9 Hun, 609); *People ex rel. Heiser* v. *Board of Assessors* (16 id., 407). It is true that in the present case the writ was directed to the collector as well as to the common council and assessors, and the collector has returned a sworn copy of the roll and warrant in his hands; but that does not aid the relator. The real difficulty is, that the roll, having passed from those officers who had any judicial or *quasi* judicial control over it, and having been placed in the hands of a mere ministerial officer, who had no power to correct errors in it, the writ of *certiorari* accomplishes nothing under such circumstances. In the case of *The People ex rel. Heiser*, above cited, the statement of awards had been filed in the finance department before the writ issued; and in the case of *The People ex rel. Law*, the assessment-roll had been filed in the office of the city comptroller; and although the writ was directed to the comptroller, it was held that a judgment could not be had against him directing him to correct the records existing in his office, as he had no jurisdiction or power over them for that purpose, but was a mere agent of the city and county for the purpose of receiving and preserving the records and taking steps, through the proper officials, for the collection of the taxes.

Nor is the relator aided by the circumstances that a motion to quash the writ had been made at Special Term and denied. That motion was made simply on the ground that the writ was misdirected and multifarious. The point above suggested was not considered on that motion.

Nor is the defect above pointed out cured or waived by the fact that return has been made to the writ. The defect is not a mere irregularity, but goes to the very foundation of the writ, and shows it to be a mere nullity.

We are satisfied that the writ cannot be sustained and that if, as the relator's counsel claimed on the argument before us upon the merits, the assessment proceedings are void, the relator must resort to its remedy by action against the city to recover the damages sustained by the relator by reason of such void and illegal proceedings.

It follows from these views that the writ must be quashed and

the proceeding dismissed, with costs and disbursements, not exceeding fifty dollars in all, to the defendant.

BARKER and BRADLEY, JJ., concurred.

Writ quashed and proceedings dismissed, with costs and disbursements, not exceeding fifty dollars in all, to the defendant.